UNITED STATES OF AMERICA,

               Plaintiff,             Case No. 11-20129

V.                              Honorable Judge Cleland

    D-35  Wayne R. Werth,

                Defendant.

Wayne R. Werth #28545-039

FDC Englewood

9595 W. Quincy Ave

Littleton, CO 80123,   pro se

**FILED**

**JUN 2 1 2013**

CLERK'S OFFICE-DETROIT-PSG
U.S. DISTRICT COURT

## MOTION TO DISMISS
### COUNTS OF INDICTMENT

    NOW COMES THE DEFENDANT, Wayne R. Werth, in pro se, and respectfully moves this Honorable Court to dismiss Indictment or Counts of Indictment pursuant to the <u>Federal Rules of Criminal Procedure</u>, Rule 6(b), Rule 12(b)(2), (3)(A),(B); Rule 48, and <u>Title 28 U.S.C. § 530B</u>; to grant pertinent discovery material pursuant to Rule 6(e)(3)(E)(ii), Rule 15, Rule 16, Rule 17, Rule 26.2(a), Rule 57(b), and <u>18 U.S.C. § 3500(b)</u>; and to grant an evidentiary hearing. In Support of said Motion, Defendant states the following:

### STATEMENT OF LAYMAN

    Pro se litigants are to be construed liberally and held to less stringent standard than formal pleadings drafted by lawyers, despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. <u>Pennington v. Jones</u>, 2006 U.S. Dist. LEXIS 8389 (EDM); <u>Fazzomo v. NorthEast Ohio Correctional Center</u>, 473 F.3d 229 (6th Cir. 2006); <u>Boag v. MacDougal</u>, 454 U.S. 364 (1982).

    1. Werth first avers that his previously filed Omnibus Motion, Motion for Flemings

'ersonal File, and Motion for Ineffective Assistance of Counsel and Request for Continuance
: Recess in Filing Pretrial Motions were all filed in anticipation to and to effecuate this
lotion. Let all know that all of said Motions are filed to preserve Werth's intentions and
:quests to attorneys and to the Court through letters, verbally, and said Motions.

2. Count 26, 18 U.S.C. § 1512(b)(3)(K) and Count 31, 18 U.S.C. §§ 1959(a)(5), 2

A. Fleming claims that Werth, Roberts, and Chris Cook came to the Lighthouse Tavern
n February 14, 2009, left, and returned later. The statements provided to Corbett O'meara
Werth's lawyer for his revocation hearing, case No. 00-80581, held on May 15, 2009) by
Jerth, Chris Cook, Ron Roberts, Amber Lang, Kristen Bell, Mark Wenglaz, and an individual
nown only by "Pony" to Werth — some of who were with Werth the entire night — all
onflict with this lie. Even a bar employee, Amber Ennis, "stated that there [sic] subjects
n the bar that she has never seen before [...]." See St. Clair County Sheriff's Incident
Leport, Incident # 09-001312, page 3.

B. Fleming claims that said defendants went there to intimidate or threaten a Federal
itness from assisting the government in a government proceeding. This conflicts from all
aid statements and from Busby's ~ statements to individuals on three different ocassions,
where Busby has claimed that Fleming made up most of the details in the statement.

C. Fleming claims Busby was the victim that night. See Werth's Exhibit B on Main
lOcket (Transcripts of Revocation Hearing), page 13. "Deputies found out that we did not have
. Complainant or Victim [...]." Police Report, supra, page 3. Yet throughout the hearing
md in the trumped up lied statement — one Busby denies being to all his words — that
leming provided the day before the hearing, at for Fleming constantly refers to Busby
s the Complainant and victim. All said statements and others who will be subpoened
onflict this lie. Even Busby has denied that many times. Cook's and Werth's and Roberts'
claims — while in separate cars miles away — conflict this. Police say all that night. id.

D. Fleming, inter alia, claimed that Werth was passed a weapon in the parking lot and he discharged it several times, which is not in said statement, and claims Busby said that. Busby denies that, and all know that Fleming fabricated that.

E. Fleming claims Werth was a prospect and hang around of Devils Disciples. Any member — take your pick — can attest to that being a lie, and, indeed, some are waiting the chance to confront those fabricated lies.

F. Fleming claims Werth said that Chris Cook fired the weapon on the night of the Hight Tavern incident while on the phone at FCI Cumberland. This is another bald faced lie, and the phone calls DIRECTLY FROM the Federal Bureau of Prisons Central Office will adduce this fabrication, a fabrication Werth contends Fleming needed to charge Cook with 924(c).

G. Fleming claims Werth again said Cook fired the weapon while at the police station on July 13, 2012. This is another bold faced lie, and these violations of due process, inter alia, must be stopped and dealt with. That day, Werth told Fleming Cook was locked up for nothing. Fleming, disgruntled, said that "Cook was growing 5 marijuana plants, as to justify."

3.  Count 34, 21 U.S.C. § 860a, 18 USC § 2

A. Fleming claims Werth made a statement admitting to participating in making meth and implicating others at the Dresden house in Detroit. This is yet another bold faced, despicable lie, and justice must come to light on all these lies. What kind of officer freely — without shame, conscience (and with incessant impunity) — puts words — the very words needed to prevail a situation — in a defendant's or suspect's mouth and uses those very words to charge people?

B. Fleming used that fabricated statement to indict Werth and Roberts and others.

3

C. Brandi Irwin has come forth to Werth's last attorney to confront Fleming's blatant lies. She had called him a "lying snake" long ago and told Werth that he would do or say anything to get him. This spawned from an interview Brandy willingly had with Fleming and his partner, inviting them into her home, where she then asked them to leave multiple times before they did because "they were very rude." See Doc 57, page 15, notes 22-24. Brandy terminated the interview after Fleming told Brandy that Werth threatens women and children. She knew that to be a despicable lie and slander of Werth, calling Werth after they left.

D. Werth called Fleming at his office and began to tell him to keep his despicable degenerate lies about him out of Fleming's mouth, along with many names that fit. Fleming became disgruntled in return and told Werth he was no angel.

E. Werth confronted Fleming about the forementioned charge at the Court building while Werth was in a cell across from the fingerprint room the day Werth received his indictment. Fleming told Werth it was a misprint.

4. As to Count 26, Fleming has fabricated mens rea with the so-called Busby statement. As Busby and all the forementioned people who will be subpoened will testify to, Busby was the attacker, attempting to jump Roberts, and Werth assisted in self-defense which was no where around or involved, nor was he supposed to be. It takes a very desperate agent to turn self-defense into "knowingly uses intimidation or physical force, threatens, or corruptly persuades another person, or attempts to do so [...] to hinder, delay, or prevent the communication to a law enforcement officer [...]" in a federal proceeding. (See 18 USC § 1512(b)(3)) which is the essential element. If a defendant lacks knowledge that his actions are likely to affect judicial proceeding, he lacks requisite intent to obstruct. See, generally, U.S. v. Friske, 640 F.3d 1288 11th Cir. 2011). Defendants must intend to head off possibility of testimony in "official proceeding." U.S. v. Misla-Aldarondo, 478 F.3d 52 (1st Cir. 2007) "[I]f the defendant lacks knowledge that

4

his actions are likely to affect judicial proceeding, he lacks the requisite intent to obstruct." United States v. Aguilar, 515 U.S. 593, 599 (1995). The Supreme Court specifically expressed the view that a conviction based on a record lacking any relevant evidence as to a crucial element of the offense charged violates due process. Vachon v. New Hampshire, 414 U.S. 478 (1974); see, also, Thompson v. Louisville, 362 U.S. 199 (1960); Fiore v. White, 528 U.S. 23 (1999).

Moreover, "it is well-established that an individual's mere presence at a crime scene does not constitute probable cause for an arrest." Harris v. Bornhurst, 513 F.3d 503, 515 (6th Cir. 2007), citing U.S. v. Castro-Garcia, 479 F.3d 579, 583 (8th Cir. 2007); Holmes v. Kucynda, 321 F.3d 1069, 1081 (11th Cir. 2003); U.S. v. Garcia, 848 F.2d 58, 60 (4th Cir. 1988) "[T]he Supreme Court has made clear that a probable cause finding may not be based upon information too vague and from too untested a source.'" id., citing Wong Sun v. United States, 371 U.S. 471, 482 (1963). Yet, here, there was no crime, and Fleming seems to be the only source.


5.   As to Count 31, 18 USC §§ 1959 (a)(3), 2, again, it is created out of perfect self-defense, a charge that is in serious conflict with many statements. "In order to establish a violation the government must show: (1) an enterprise affecting interstate or foreign commerce existed; (2) the enterprise was engaged in racketeering activity; (3) the defendant had, or was seeking, a position in the enterprise; (4) the defendant committed the alleged crime of violence; and (5) the defendant's general purpose in ~~the enterprise~~ committing the assault with a dangerous weapon was to maintain or increase his position in the enterprise." United States v. Sanchez, LEXIS 39932 (D.T. 2011), citing U.S. v. Burden, 600 F.3d 204, 220 (2nd Cir. 2010); and U.S. v. Fiel, 35 F.3d 997, 1003 (4th Cir. 1994).

Through subpoena or written interrogatories, every D.O. member on this indictment will attest to the fact that Werth —nor Cook— was not an associate nor prospect of the club. Many will attest to Werth's disdain for many members and for what the club represented. Many will attest that Cook left the club and wanted nothing more to do with it; moreover, Cook was

, fear of everyone in the club except Ron Roberts ~~that might~~ because of Roberts' disdain of the leaders and the things they did to Cook. Moreover, Cook was not even involved in re self-defense, was no where around. Fleming knows all this, but he is no different than a mafia bully pushing his weight on innocent people just to suffice his agenda. Werth contends a hearing will adduce all this and more, including things said to witnesses that could very well be deduced into attempting to create bias to reinforce untruthfulness.

Because — and definitely not to underplay the actual innocence of said crimes — t can so easily be proven that Werth and Cook were not associates of club, rather casually ssociated with a member of the club, there is a jurisdictional issue, that is, Werth contends here is an insufficient connection to interstate commerce. See United States v. Degan, 29 F.3d 553, 556 (6th Cir. 2000).

6. As to Werth's role in Count 3, 21 U.S.C. §§ 846, 841(a)(1), the government alleges, inter alia, that Ronald Roberts operated a "methamphetamine manufactory laboratory" on Dresden St. It goes on to say Werth provided material. See note 192 of indictment. Much of this spawns from said statement, and it is encroachingly, corruptly untrue.

Werth never supplied Roberts with material; moreover, again, Werth never witnessed or knew of anything going on there. Roberts asked Werth to sit with him a couple times while he used a bottle to make meth — far from the pompous, "manufacturing laboratory" ~~that~~ Fleming exaggerates — and it did not take place at the Dresden house. Werth did not ~~receive~~, nor was there an agreement to, receive any of the product; therefore, there was no distribution between them, which is an element of said offenses. If anyone says otherwise or that Werth sold any meth to anyone, Werth will show, yet, another bold faced liar who is going to help himself at the detriment of others in the long ought-to-be-ashamed-of list of lying I government witnesses. Werth has not just repeatedly claimed this but also offers himself or polygraph.

Out of principle alone, Werth wishes to show all the world at trial just who the wretched, black souled liars are, but Werth contends first that there will be fatal

6

variances that will lucidly cause prejudice to Werth. The government lists 23 defendants in a time frame from 1992 to the present in a single conspiracy, and, in fact, there are countless conspiracies entwined.

At the best, after a hearing on the Ronald Roberts fabricated affair by Fleming, the government can allege that Werth associated with an ex-member of the D.D. MC, one an ex-member who had not been to the clubhouses in years nor was allowed at them (facts that Fleming is well aware of but knowingly disregards in his normal pompous, exaggerated bad twist of things), from approximately July 2, 2011 until August 19, 2011, and later with a separate person from approximately October of 2011 to December of 2011. This would be two separate conspiracies alone, much less all the others entwined 18 years before or within that period.

Werth neither knows the majority nor has he interacted with them. "While a single conspiracy does not become multiple conspiracies simply because each member of the conspiracy does not know every other member," the government must show that the alleged members "agreed to participate in what he knew to be a collective venture directed toward a common goal." United States v. Warner, 690 F.2d 545, 549 (6th Cir. 1982).

While the courts have found single conspiracies among co-conspirators when the connections were minimal, those instances are much more organized. See, e.g., United States v. Kelly, 849 F.2d 999, 1003 (6th Cir. 1988) (holding that a defendant who was involved only in San Francisco was part of a single conspiracy with a common distributor who also operated in two other cities).

The government seems to be asserting that this is a wheel conspiracy (or hub-and-spoke conspiracy) where the D.D. MC served as the hub connected to each conspirator by a spoke, but there was no common or organized scheme. This is a rimless wheel conspiracy," one in which various defendants enter into separate agreements with a common defendant, but where the defendants [like Werth] have no connection with one another, other than a common defendant's involvement in each transaction." Dickson

r. Microsoft, 309 F.3d 193, 203 (4th Cir. 2002); See also United States v. Chandler, 358 F.3d 746, 808 (11th Cir. 2004) ("For a wheel conspiracy to exist, those people who form the wheel's spokes must have been aware and must do something in furtherance of some single, illicit enterprise.") There was neither a common goal nor significant interdependence among the defendants. Chandler, at 811. A severance under Federal Rules of Criminal Procedure, Rule 14, should, at least, be granted.

7.   As to Count 34, 21 U.S.C. §§ 860a, 2, Werth contends it is the ripple effect of said fabricated statement. There is no other connection. One of Werth's conditions upon asking Brandy Irwin if she would like to move to the Dresden house was that certain people would not be allowed there and that certain things could not go on there because of her child; in fact, one of the very reasons Werth asked Brandy if she wished to move was because of the very unhealthy situation she and her child were currently in. The girl whom she was staying with was very messed up on drugs, falling asleep with the burners and oven on for hours, falling over while cooking, knocking tables over, etc, and because Brandy and her child were sleeping on the living room floor of the apartment. There were cigarette burns on all the furniture and throughout the apartment floors from her roomate. In describing to Ms. Mohsin how she (Brandy) came to live at the Dresden house, she states as much. See Doc # 57, notes 1-10 :

A.   And she was a little messed up and they were trying to help me get on my feet for my son.

Q.   So you did not have a place to live prior to moving into Dresden?

A.   I did, but it wasn't a very safe environment. So I moved for me and the sake of my child.

Q.   And Wayne Worth [sic] was the friend that, that brought you to the Dresden location?

A.   Yes.

Besides being wrongfully exaggerated — "fabricated" is the only word that seems to fit in light of every other encroachment — this charge screams aloud of inference upon inference. The government claims to have found material for making meth, but they found no drugs. Without said statement, they have no Dresden house conspiracy, and that is the place Fleming all so badly needed. So without statement, the government can **infer** only, and as to this charge, infer upon inference. How is the government even permitted to indict under such inference? Because of said statement; just what Fleming needed.

Fleming has self-created the intent, because "[w]ithout the knowledge, the intent cannot exist. <u>Direct Sales Company v. United States</u>, 319 U.S. 703, 711 (1943) citing <u>U.S. v. Falcone</u>, 311 U.S. 205 (1940) "Furthermore, to establish intent, the evidence of knowledge must be clear, not equivocal. This, because charges of conspiracy are not to be made out by piling inference upon inference, thus fashioning what [... is] called a dragnet to draw all substantive crimes." <u>Direct Sales Company</u> at 711.

Werth offered her to live there to help her, to be away from a bad place. Werth contends that when a charge or conviction has no direct evidence of guilt [... and] is supported <u>only</u> by <u>circumstantial</u> evidence from which one can <u>infer either</u> facts tending to prove the defendant's guilt, or facts tending to prove his innocence", it cannot stand. <u>United States v. Leon</u>, 534 F.2d 667, 678 (6th Cir. 1976) This charge lacks and "'at most establishes no more than a choice of reasonable probabilities' or inferences, one criminal and the other innocent." id. (imputing <u>United States v. Saunders</u>, 325 F.2d 840, 843 (6th Cir. 1964).

## 8. Government Misconduct

A. As to the charges spawning from the Busby incident, Werth contends that the record adduces some serious untruths, and that alone, ipso facto, must compel the government and the court to investigate. Fleming refuses to and ignores the truth because the truth shall set some free, three charges on Werth alone and set Cook totally free. At first, Werth thought Busby was the liar, using the law to avenge a loss that he started, but in light of Busby's three-time denial of said statement, Werth's own direct knowledge of

vents, and others' claims, Werth contends Fleming is the unprincipled man. ~~Fleming~~ He is ignoring the true facts of that night ~~and or~~ he is the one making them up as he goes along, putting words in Burby's mouth as he has others.

The function of the law enforcement is the prevention of crime and the apprehension of criminals. Manifestly, that function does not include the manufacturing of crime. Criminal activity is such that stealth and strategy are necessary weapons in the arsenal of the police officer. However, 'a different question is presented when the criminal design originates with the officials of the government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order that they may prosecute.' U.S. v. Russell, 411 U.S. 423, 434-35 (1973) citations omitted.

Werth contends that, in essence, Fleming has manipulatively entrapped Werth, Cook, and Roberts. The subjective test of entrapment considers the defendant's other criminal acts and predisposition to engage in the charged criminal activity. Werth's record will show a predisposition for self-defense, and many witnesses will attest to Werth's predisposition for taking up for others against the bullies, bullies ~~like~~ like Fleming who arrogantly parades around others like he cannot be wrong using the weight of the U.S. Government to back his lies, whether the defendants are innocent or guilty.

Under the subjective test, entrapment occurs when "[in] their zeal to enforce the law," government agents create a criminal design, "implant in an innocent person's mind the disposition to commit a criminal act, and then induce commission of the crime so that the government may prosecute." ~~Johnson~~ Jacobson v. United States, 503 U.S. 540,      (1992). According to witnesses and defendants, Fleming has implanted the victim role in Burby by making up facts that DID NOT occur, thus creating a crime so the government may prosecute. It is inherently the same. It is without a doubt a government agent creating a crime so the government can prosecute, but it is more, also. Federal law independently forbids criminal convictions that rest upon entrapment. See generally, United States v. Jimenez Recio, 573

U.S. 270 (2003).

If Busby is the one claiming he was jumped or threatened, the effects are the same, a government witness inducing a fight — one he thought would be an easy win against Roberts — and claiming he was attacked only days later after he got the worst so the government could prosecute. See, generally, <u>Jacobson</u>, supra. See also <u>U.S. v. Washington</u>, 106 F.3d 983 (DC 1997); c.f., <u>U.S. v. Busby</u>, 780 F.2d 804 (9th Cir. 1986).

The fact is there are many — all against him or his one — witnesses that Fleming intentionally ignored in his relentless stalk of anybody that can serve as another chalk on his life-work indictment.

    A. My uncle was outside, and Ron went outside to talk to him
       and [...] at that time Dan Busby come out the back door
       and thought there was going to be another argument but
       the fists started flying. [See Transcripts of Werth's revocation hearing, pages 34-35.

During Mark Wenglaz's testimony, Fleming snickered and mumbled sarcastic remarks like a sullen little kid when Mark stated he only knew Werth from that night, when he said Busby ~~was~~ is like his brother, when he stated that there were others who ran out with Busby that he knew from high school, and when he told where Werth was at the end of the fight — middle of the road — and truthfully stated he did not see Werth shoot a gun. These were all lies to Fleming, but it was found out — after Fleming swore on oath and pushed so hard — that Werth, in fact, did not shoot a weapon. Even now Mark and Busby are still good friends, where Werth is not with them, yet Fleming — with malfeasance — is intentionally ignoring and adding to the true facts in order to get a conviction, whether innocent or not. Fleming does not care!

The fact is that one of them are lying and "[a] lie is a lie, no matter what its subject and, if it is in any way relevant to the case, the district attorney has the responsibility and duty to correct what [she] knows to be false and elicit the truth." <u>Napue v. Illinois</u>, 360 U.S. 264, 269-70 (1959).

# ¶ DISCOVERY REQUESTS PURSUANT TO EVIDENTIARY HEARING[1].

## A. Grand Jury Minutes

Under the Federal Rules of Criminal Procedure, Rule 6(e)(3)(E)(ii) "[T]he court may authorize disclosure — at a time, in a manner, and subject to any other conditions that it directs — of a grand jury matter at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occured before the grand jury." "Disclosure is proper only on a showing of compelling necessity' and 'particularized need'" ~~and~~ and the "burden" is on the defendant. United States v. Azad, 809 F.2d 291, 295 (6th Cir. 1986); See also Pittsburgh Plate Glass Co. v. United States, 360 US. 395, 400 (1959). "For example, a defendant's burden is met where the testimony is needed to test a witness's credibility, impeach a witness, or refresh a witness's recollection." United States v. Procter & Gamble Co, 356 U.S. 677, 683 (1958).

There was no witness tampering nor an assault on Burby that night, only self-defense that all witnesses can attest to, even Burby has admitted to it, yet someone went to the grand jury and gave perjured testimony. Werth DID NOT claim to have done anything at the Dresden house as Fleming claims, and that false statement could not have been lawfully used at a grand jury. Werth did not say Chris Cook fired a weapon on said night while on the phone at FCI Cumberland, and this could not lawfully ~~be~~ have been used at a grand jury. Werth contends — and this is not the only case — someone has committed perjury by going to the "grand jury of the United States Knowingly making (a) false material declaration" (18 USC § 1623) under oath, and it is more possible the government suborned perjury. See generally, Coe v. Bell, 161 F.3d 320, 343 (6th Cir. 1998). The government may not rely on perjured testimony to secure an indictment before the grand jury. U.S. v. Useni, 516 F.3d 634, 656 (7th Cir. 2008); U.S. v. Basurto, 197 F.2d 781, 785-86 (9th Cir. 1974). Arrest pursuant to a grand jury indictment may violate the 4th Amendment if the grand jury was mislead. See generally, Mastroianni v. Bowers, 160 F.3d

671 (11th Cir. 1998).

In _Dennis v. United States_, 384 U.S. 855 (1966), the Court considered five factors in favor for such discovery, three of which are undoubtedly close to this case: (ii) the relative importance of the witnesses to the prosecution's case, stating that they were the key witnesses and the charge could not be proved without their testimony. (In this case, Burby is the only key witness, yet he denies the statement. So is it Fleming that is the key witness?); (iii) the testimony concerned oral statements and conversations that were not corroborated, thus, the issue of guilt or innocence could turn on exactly what was said and the defense should have been made available to it all relevant and reasonably available aid to determine the precise substance of the statements. (Burby's putative statement issued by Fleming is very un-corroborated by all other statements, as well as by Burby himself on three different occasions, where he freely admitted to being the attacker, inter alia, twice to one person who was not present that night and once to a person who was there and testified, to the true facts.); (iv) that two of the witnesses were accomplices, one of which was also a paid informer, and a third witness had reasons to be hostile towards defendants. (The record alone adduces the many lies told by Burby's hometown friends, stating Werth was in the middle of the road discharging a weapon twice — Fleming says three times — and that the defendants jumped Burby, which is why those witnesses will not come to court because they do not wish to commit perjury, which will be testified to at hearing. They attempted to jump Roberts, and Werth by himself saved him. They lost — Most ran — and their prides were hurt, so it appears Burby called Fleming the next day to get even)

Besides for the putative Burby statement, there is only grand jury testimony, and someone has committed perjury. This discovery is imperative, and "[i]n our adversary system for determining guilt or innocence, it is rarely justifiable for the prosecution to have exclusive access to a storehouse of relevant fact." id. at 872-873 Moreover, knowing use of perjured testimony by prosecuting authorities, if sufficiently alleged, taints a conviction. Due process is violated not only where prosecution uses perjured testimony to support its case,

...but also where it uses evidence which it knows creates a false impression of a material act. See generally, Hamric v. Bailey, 386 F.2d 390 (4th Cir.); See also Rickman v. Dutton, 64 F. Supp 686 (MD Tenn. 1994) The knowledge on the part of the prosecution need not exist prior to the giving of the perjurious testimony, that is, the due process guaranty is violated when the prosecution permits it to go uncorrected. Napue v. Illinois, supra.

The Federal rule before Title 28 USC § 530B had been that a Federal prosecutor need not provide exculpatory evidence to the grand jury. See, e.g., United States v. Williams, 504 U.S. 36, 52 (1992). After 1998, Congressman McDade's Citizens Protection Act (§ 530D) revolutionized the application of state rules to Federal prosecutors. This Section has been worked into the Code of Federal Regulations and intergrated into the U.S. Attorney's Manual, and irregardless of the Williams rule, the United States Attorneys Manual States that when an AUSA "is personally aware of substantial evidence that directly negates the guilt of a subject of the investigation, the prosecutor must present or otherwise disclose such evidence to the grand jury before seeking an indictment against such a person." U.S.A.M § 9-11.233 (2008) Werth has already set forth all the available exculpatory evidence, resting right in the files in the very building the prosecutors work in. It appears lucid what the intent is in McDade's language. Some circuits have dismissed indictments because the AUSA relied too heavily on hearsay evidence and presented false DEA testimony, the incidents being related to flagrant and unconscionable. See U.S. v. Hogan, 712 F.2d 757 (2d Cir. 1983). The prosecutor is an officer of the court whose duty is to present a forceful and truthful case, not to win at any cost. See, e.g., Jenkins v. Artuz, 294 F.3d 284, 296 n.2 (2d Cir. 2002). "It is only when the criminal procedure is subverted that 'good cause' for wholesale discovery and production of a grand jury transcript would be warranted." Gamble, 356 U.S. at 684

Werth request the grand jury number, the dates of impanelment and discharge of the grand jury that indicted him, and the dates and times of sessions. Not all non-substantive matters concerning grand jury proceeding must be kept secret." U.S. v. Abernathy, 2009 U.S. Dist LEXIS 31144 (EDM). Werth does not request the record of votes or

the names of the jurors. It is in the interest of justice and the integrity of the U.S. Constitution, various applicable statues, and guidelines that the transcripts be provided before the hearing. Any objections to an indictment for perjured testimony and evidence must be raised during pretrial, or it can be deemed waived. U.S. v. Combs, 369 F.3d 925, 936-37 (6th Cir. 2004); Fed. R. Crim. Proc. 12(e). "A conspiracy case carries with it the inevitable risk of wrongful attribution of responsibility to one or more of the multiple defendants." Dennis, supra, at 873, citing US. v. Bufalino, 285 F.2d 408, 417-18 (2d Cir. 1960). "Under these circumstances it is especially important that the defense, the judge and the jury should have the assurance that the doors that may lead to truth have been unlocked." id.

Ninth Circuit Federal judge Alex Kozinski has been quoted: "[I]t is an open secret long shared by prosecutors, defense lawyers and judges that perjury is widespread among law enforcement officers." Stuart Taylor, Jr., For the Record, Am. Law., Oct. 1995, at 72. The problem prevails, permeating the criminal justice process, not just at hearings.

Despite this open secret, judges validate police testimony they know to be perjurious— as Fleming's five published cases lucidly show—for a variety of reasons, including the desire to assist law enforcement officers in convicting people whom the judges believe are guilty, as well as the desire not to appear "Soft on crime" by the media, jeopardizing re-elections. Andrew J. McClurg, Good Cop, Bad Cop: Using Cognitive Dissonance Theory to Reduce Police Lying, 32 U.C. Davis L. Rev. 389, 405 (1999). But what about those wrongfully charged who wash away between the partial cracks of the guilty because of a tyrant agent who just cannot accept being wrong?

The inherent fact is: Werth and others are innocent of multiple charges, and Werth contends these charges spawn from perjurious testimony and the intentional exclusion of available exculpatory evidence at the grand jury. The "particularized need" is more than sufficed. The viewing of the transcripts, at least, can be carried out in camera by an advocate of Werth. "The determination of what may be useful to the defense can properly and effectively be made only by an advocate." Dennis, supra, at 875.

15

An in camera inspection by the judge can provide the necessary balance between the need for secrecy and fairness to the defendant in presenting the defense. Paz v. United States, 462 F.2d 740 (5th Cir. 1972) At the hearing, Werth contends the Jencks Act (18 U.S.C § 3500 (b), (c) and Fed. R. Crim. Proc. 26.2 (a), (g)) will suffice.

"The right of a petitioner [...] to have a hearing upon a proper allegation that the prosecutor knowingly used perjured testimony was settled in Simpson v. Teets, 353 U.S. 926 (1957); See Mooney v. Holohan, 294 U.S. 103 (1935); Pyle v. Kansas, 317 U.S. 213 (1942); Alcorta v. Texas, 355 U.S. 28 (1957)." Smith v. United States, 259 2d 125, 127 (9th Cir. 1958)'; See also Bradford v. Johnson, 354 F. Supp. 1331, 1335 (E.D.M.) "The allegations of [this] petition relating to the knowing use of false testimony [may be] brief and [may] lack particularity. However, this court has always judged petitions drawn by laymen in the position of this petitioner with liberality." Smith, id. at, citing Thomas v. Teets, 205 F.2d 236, 238 (9th Cir.)

B. Request for Fleming's Handwritten notes of Burby Incident and Notes from the "Reliable Witnesses", "Ones used in the Past" from Dave Roberts

### Incident

In light of all claims, Werth contends Fleming's notes of interview with Burby pertaining the said incident are imperatively needed to compare to the inconsistencies of Burby's verbal claims; moreover, they should be compared to his putative statement giving Werth at his revocation hearing and to the grand jury transcripts.

As Werth averred and requested ~~Sam~~ Sal Battaglia's doctor records to prove, Fleming's "Reliable witnesses, ones he has used in the past", are blatant liars either lying out of spite for Werth or trying to help themselves by contriving stories. However, as Werth claimed in his Motions, these statements appear to be products of Fleming's propensities for fabrication. Handwritten notes taken during police interview of victim of crime for which defendants are charged should be available to defense under prosecutor's duty to disclose exculpatory material. Loss of such discovery can be reason

for determination of bad faith. U.S. v. Maryland, 476 F.2d 1170 (D.C. App. 1973) Werth should be entitled to them if witnesses indeed adopt them. C.f., U.S. v. Medina, 992 F.2d 573, 580 (6th Cir. 1993).

As Werth has stated, there are many government witnesses lying on others out of spite and to help themselves. The problem is that Fleming knows firsthand what is happening, but he looks the other way in support of his agenda. Stephen Trott, a former prosecutor, now a U.S. Circuit Court of Appeals judge, has warned that informants' "willingness to do anything [to help themselves] includes not only truthfully spilling the beans on friends and relatives, but also lying, committing perjury, manufacturing evidence, soliciting others to corroborate their lies with more lies, and double-crossing anyone with whom they come into contact, including ... the prosecutor." Mark Curriden, Secret Threat to Justice, National Law Journal, Feb. 20, 1995, at 1A.

### C. Request for Fleming's CI Responsibility Reports on Burbz and the "Reliable Witnesses", ones used in the Past

Pursuant to the Department of Justice Guidelines regarding the use of confidential informants (CIs), a JLEA agent must perform certain tasks.

Part II REGISTERING A CONFIDENTIAL INFORMANT   A. Suitability Determination required Fleming to complete and sign a written Initial Suitability Report and Recommendation, in which he had to address certain factors before utilizing Burbz of the "reliable witnesses" as CIs. Werth contends g through q are Brady material and requests them.

Part C. AUTHORIZATION OF OTHERWISE ILLEGAL ACTIVITY   1. a. "A JLEA shall not authorize a CI to engage in any activity that otherwise would constitute a misdemeanor of felony [...]."   b. A JLEA is never permitted to authorize a CI to: (i) participate in an act of violence;" Did Fleming ignore Burbz's act of violence on Roberts because of these guidelines? Fleming is aware, but did he

report it?. Did Fleming or the Chief Prosecutor (Ms. Mohsin, here) authorize Tier 1 illegal activity for Burby?

"(ii) participate in an act that constitutes obstruction of justice (e.g. perjury [...] entrapment of the fabrication [...] of evidence)". If Burby is the one, who, indeed, is saying he was the victim, etc, he is violating these guidelines either, but Fleming is either looking the other way or part of it. Either way he is culpable. What would it look like if his valuable witness was found to be lying?.

Werth request this material and the continuing suitability Reviews that are filed annually. One of the two has already committed perjury a number of times and fabricated evidence. There is an undeniable pattern of lies that is unlawful, and the court and the prosecution get ~~their~~ their chance to correct it. All this material is Brady; moreover, it is permitted by the exercise of the Court's inherent power to order discovery through the federal Rules of Criminal Procedure, Rule 57(b).

D.   Werth's BOP  Phone Calls

As Werth has repetitively requested, Werth request all calls that Fleming was referenced in discovery DIRECTLY FROM BOP's Central Office, so the calls are in their entirety and of good quality. In particular, Werth request the full call from Central where Fleming claims Werth said Cook fired the weapon. This call is imperative to this motion.

Werth contends  United States v. Nixon, 418 U.S. 683 (1974) is on point. The Court concluded that the special prosecutor had made a sufficient showing to justify a subpoena for production of material before trial, where (1) there was a sufficient likelihood that each of the subpoened tapes contained conversations relevant to the offenses charged. (Fleming has already established that, so he thinks.) (2) with respect to many of the tapes, the special prosecutor had offered sworn testimony of participants in the conversations as to what was said (Werth's affidavit in Motion for Flemings personal file as well as statements in these motions that Werth knows he did not say Cook fired the weapon);

18

be dismissed. Werth will file a motion and brief addressing each witness if the court desires. As to simplify the process, Werth re-asserts the request for written interrogatories filed in Omnibus Motion.

## II. Conclussion

Werth has shown more than enough to grant a hearing. There are discovery issue that need more than just suppression. There numerous matters that are ripe now before trial, and these issues will undoubtedly lighten the trial load.

Professor Donald Dripps has suggested that at suppression hearings where the outcome of the proceeding depends on the credibility of witnesses, "the Court should inquire whether either party is willing to supplement the record with a polygraph examination of the party's witness or witnesses." Although judges are not bound by the results, they could consider the results in conjunction with all the other evidence, and the results would be part of the record for th appellate courts. Donald A. Dripps, Police, Plus Perjury, Equals Polygraph, 86 J. Crim. L & Criminology 693, 694 (1996).

The forementioned accusations are a serious matter. Three charges on Werth pawn from perjury and fabricated evidence. Burby is a Federal witness. In his contract with the government he is subject to a polygraph. If he, indeed, is the one yelling "assault and intimidation", he is being untruthful and lives are in jeopardy because of it. Burby claims no, so who is next? Title 29 USC § 801.11 oes not exclude agents.

The prosecution appears to be following Fleming's path of quantity and not quality, and looking the other way just to win is unjust.

WHEREFORE, Werth request this Honorable Court to grant the following:

A) All discovery requests herein and previously requested in both previous motions;

(3) in regard to the remaining tapes, the identity of the participants and the time and place of the conversations, taken in ~~test~~ their total context, permitted a rational inference that at least part of the conversations related to the offenses charged in the indictment. (It appears Fleming has just taken pieces of some and is trying to validate them, which means ALL calls hold valuable exculpatory evidence.); (4) there was a sufficient preliminary showing that each of the subpoenaed tapes contained evidence that was admissible with respect to the offenses charged under indictment. (Fleming has already validated this, only he wishes to pick and choose while inferring beyond respectable and putting words into Werth's mouth.); (5) the subpoenaed materials were not available from any other source, and their examination and processing should not await trial in the circumstances shown. (Here we have an agent claiming things were said when they were not. Frankly, with all the fabrication and words put into Werth's and other's mouths, the only trustworthy place to assure the genuity of calls is from Central Office, the calls in their entirety, from "hello" to "goodbye." With reason, Werth does NOT trust anything coming from Fleming and further requests any calls claiming Werth said Cook fired weapons be sent to specialtists. because Werth would claim they are fabricated.

## 10. Subpoena Issues

As Werth has asserted in his previous motions, he intends to subpoena many defendants who are currently incarcerated and many who are not defendants and hold imperative direct, very impeachable, and character evidence on both defendants and Fleming. When the hearing is granted, Werth request extra time to prepare his own subpoenas which describe the process of showing cause for contempt and for disobedient witnesses under Rule 17(g). Many hold the truth to the Borby incident, but are afraid to come to court because they lied on the night of incident. They have already told another they will not commit perjury, and Werth request the court to be fair and compel their appearances.

The truth needs to be told, so these unlawfully obtained charges can rightfully

19

B) Conduct hearings for suppression of evidence and for perjury;

C) dismiss counts of indictment;

d) grant polygraph examinations of all witnesses addressed herein;

e) grant any other further relief this Court may deem just and proper.

<u>VERIFICATION</u>

I, Wayne R. Werth, do hereby state that the forementioned is true and correct to the best of my knowledge and belief.

Respectfully submitted,

Wayne R. Werth

Wayne R. Werth

cc: J. Butler

Dated: 6-17-13



Clerk of the Court
231 W. Lafayette
Detroit, MI 48226

✳ LEGAL MAIL ✳
6-17-13

Keith # 28545-039
...ion Center
...sing Avenue
...8
...

CORRECTIONAL SYSTEMS MANAGEMENT
FEDERAL CORRECTIONAL INSTITUTION
9595 WEST QUINCY AVE, LITTLETON, CO, 80123

DATE/INITIALS 06.17.2013 ____

SED LETTER WAS PROCESSED THROUGH SPECIAL MAILING
S FOR FORWARDING TO YOU. THE LETTER HAS NEITHER BEEN
I INSPECTED. IF THE WRITER RAISES A QUESTION OR PROBLEM
AL THIS FACILITY HAS JURISDICTION, YOU MAY WISH TO RETURN
AL, FOR FURTHER INFORMATION OR CLARIFICATION. IF THE
CLOSES CORRESPONDENCE FOR FORWARDING TO ANOTHER
, PLEASE RETURN THE ENCLOSURE TO THE ABOVE ADDRESS.