UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                    Case No. 11-20129

WAYNE RUSSELL WERTH,

    Defendant.

_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO VACATE SENTENCE, DENYING ALL PENDING MOTIONS, AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

Before the court are multiple motions filed pro se by Defendant Wayne Russell Werth in support of, or supplementation to, his motion filed under 28 U.S.C. § 2255. Defendant was convicted by his plea of guilty of conspiracy to manufacture, distribute, and possess with intent to distribute controlled substances, and sentenced to 180 months of imprisonment. Defendant appealed and was represented on appeal by counsel. In June 2017, Defendant's appeal was dismissed pursuant to his valid waiver of appeal contained within his plea agreement.

Since that time, Werth has filed countless *pro se* motions, letters, and requests. The court resolved the first wave of motions, many of which presented unsupported allegations that multiple federal and state law enforcement officers, court staff, judicial officers, attorneys, and other unknown individuals have, individually or in concert, lost, destroyed, or failed to provide Defendant with various legal materials. (ECF No. 2193.) The court noted that filed pleadings and letters on the docket are now, and have been,

available to Defendant, that he had not made any showing of an actual need for his expansive requests, and that he had made no credible showing that the documents were altered or withheld from him. (*Id.*, PageId.31419.) Likewise, the court rejected Defendant's specious arguments that transcripts from this court had been altered, and denied his request to investigate the authenticity of court records. (*Id.*, PageId.31420.) In the first round of motions, Defendant made broad and incredible "allegations about the doctoring and creation of letters, affidavits and other discovery contained on the government-issued iPads provided to Defendant," accusing in that regard the FBI Case Agent, the two Assistant United States Attorneys assigned to this case, Clerk's Office employees, the undersigned judge and, by implication, another judicial officer in this district. (*Id.*, PageId.31422.) The court rejected his request "that all discovery materials be placed under seal, that he be given another iPad with all of the previously-provided discovery, that he be given, essentially, all pleadings, motions and any other filings which have been filed in this case (presumably without copy charges), that the court take steps to "authenticate" various documents, and that the Clerk's Office be ordered to take certain actions." (*Id.*) The court rejected these requests as "outlandish theories [without] a semblance of truth supporting them." (*Id.*)

Following entry of this order, Defendant filed his motion under § 2255, along with another slew of motions amending, supplementing, and correcting his original motion. He also presented the court with a second round of motions quite similar to his first round, which accused the Government attorneys and Case Agent, the Clerk's Office, the court, and its staff, of various wrongdoings and misrepresentations. The court

2

denied those motions in a May 1, 2020 "Opinion and Order." In that order, the court rejected Defendant's assertion that the Government had fabricated the plea agreement and that he had instead signed a version where he did not waive his appeal rights. The court also dismissed as frivolous Defendant's assertions of conspiracy and found totally unbelievable his contention that the Rule 11 agreement on the docket had been doctored and that the imagined agreement he signed did not contain an appellate waiver. Likewise, the court also denied Defendant's motion for a copy of an "original" search warrant, in which he claimed that the Government had altered an October 2011 search warrant. The court found these contentions baseless and noted that his continued arguments of conspiracy obfuscated the few substantive issues in this case.

Following the May 2020 order, the court granted an enlargement of time to complete the briefing in Defendant's § 2255 motion. That briefing has now been completed and the matter is ripe for review. For the reasons discussed below, Defendant's § 2255 motion will be denied.

**I.  STANDARD**

Title 28 U.S.C. § 2255 allows federal prisoners to challenge their sentence. The prisoner must show that his or her "sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). The Sixth Circuit has clarified that § 2255 provides three bases for relief: "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an

error of fact or law that was so fundamental as to render the entire proceeding invalid." *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003) (quoting *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001)).

Ineffective assistance of counsel, guaranteed under the Sixth Amendment's right to counsel, is a valid basis for suit under § 2255. *Massaro v. United States*, 538 U.S. 500, 504 (2003). Such a claim falls into the first § 2255 category, errors of constitutional magnitude. *United States v. Doyle*, 631 F.3d 815, 817 (6th Cir. 2011) (citing *Pough*, 442 F.3d at 964; *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003)). In order to prevail on a claim for ineffective assistance of counsel, the prisoner-defendant "must show that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

For counsel to be "deficient," representation must "[fall] below an objective standard of reasonableness." *Id.* at 688. "[T]rial counsel's tactical decisions are particularly difficult to attack." *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "Judicial scrutiny of counsel's performance must be highly deferential, and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Knowles v. Mirzayance*, 556 U.S. 111, 124 (2009) (quoting *Strickland*, 466 U.S. at 689-90).

To show that an attorney's performance "prejudiced the defense," "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability

is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Hall v. Vasbinder*, 563 F.3d 222, 237 (6th Cir. 2009).

It is the prisoner's burden to prove his or her claim by a preponderance of the evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (citing *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003)). The prisoner must come forward with verifiable allegations of fact sufficient to support an entitlement to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961); *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959). Mere legal conclusions are inadequate. *O'Malley*, 285 F.2d at 735; *Loum*, 262 F.2d at 867. A prisoner is not entitled to relief when "allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)).

The standard for holding an evidentiary hearing is similar. "Where there is a factual dispute, the *habeas* court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Martin v. United States*, 889 F.3d 827, 832 (6th Cir. 2018) (quoting *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999)). Further, "[w]hen a defendant presents an affidavit containing a factual narrative of the events that is neither contradicted by the record nor inherently incredible and the government offers nothing more than contrary representations to contradict it, the defendant is entitled to an evidentiary hearing." *Id.* (quoting *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013)). Where, as here, Defendant attempts to assert facts that are both contradicted

by the record and inherently incredible, the court need not conduct an evidentiary hearing. *Id.*

## II.  DISCUSSION

Defendant has filed volumes of documents before the court, all related to his motion under 28 U.S.C. § 2255.  As with his countless other pro se documents, his allegations are difficult to decipher through his meandering, border-line paranoid allegations of fraud, corruption, and forgery. He alleges prosecutorial misconduct, mishandling of documents during his incarceration, witness perjury, false Rule 11 documents, judicial misconduct, and transcript tampering. Many of these issues have been raised, and rejected, in the past, and any argument that has already been resolved will not be reexamined now but is instead implicitly rejected. The Government does an admirable job of distilling his remaining arguments into six main issues. In an effort to bring some order out of the chaos of this docket, the court will adopt the Government's accurate outline of Defendant's claims.  The issues will be briefly addressed, and the court will deny his requests for relief as well and will decline to issue a certificate of appealability.

### A.  Validity of the Appeal Waiver

A defendant may waive his right to appeal if the waiver is knowingly and voluntarily made. *United States v. Beals*, 698 F.3d 248, 255 (6th Cir. 2012). Before accepting a guilty plea, this court "must inform the defendant of, and determine that the defendant understands . . . the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence." Fed. R. Crim. P. 11(b)(1)(N).  There is

no question in this case that Defendant made a knowing and voluntarily waiver of his appellate rights, or that he was appropriately informed of the implications of that waiver.

Following his sentencing, Defendant filed a timely notice of appeal. The Government moved to dismiss the appeal on the basis of Defendant's appeal waiver. The Sixth Circuit Court of Appeals stated:

> Werth argues that the appeal waiver in the plea agreement is unenforceable because the government breached the agreement and because the terms of the appeal waiver are ambiguous. In the plea agreement, the government agreed to recommend a sentence of no more than 294.5 months, which was the mid-point of the agreed-upon range of 262 to 327 months. After the district court calculated the guideline range to be 151 to 188 months, the government recommended a sentence at the top of that range—188 months. That recommendation did not breach the government's agreement to recommend a sentence of no more than 294.5 months. And we find no ambiguity in the plea agreement that would prevent its enforcement.

(ECF No. 2106, PageId. 30683.) Finding Defendant to have waived his appeal rights, the Sixth Circuit granted the Government's motion to dismiss and dismissed the appeal. (*Id.*)

Defendant now makes a series of arguments why this holding was in error and why he never waived his appellate rights. At worst, he is deliberately inventing history in an attempt to undo his appellate waiver. At best, he is confusing an appellate waiver with the right he in fact did retain-- to make certain arguments at sentencing. Specifically, Defendant retained the right to argue "pursuant to Section 1B1.3(a)(1)(B), that certain acts of others were (1) not reasonably foreseeable; nor (2) in furtherance of jointly undertaken criminal activity; that occurred during the commission of the offense of conviction." (ECF No. 1381, PageID.16395.) While Defendant reserved the right to

7

make arguments during sentencing related whether conduct of his co-conspirators could be attributable to him, Defendant clearly and unequivocally waived his right to appeal, and nothing he now says to the contrary can erase that fact.  Indeed, the court explained this to Defendant during his plea hearing, stating:

> In your Rule 11 agreement, the written agreement, you are also giving up two other rights, more procedural rights that you have. You're relinquishing these rights in advance. Number one, you're giving up the right that you would ordinarily have to appeal, that is, to challenge the convictions that will be entered based upon your truthful guilty plea. It seems strange, but people can voluntarily plead guilty and then turn around the next day and challenge their conviction. It's not very often successful, but in any event, you are giving up, in advance, whatever right you would have to do that. So what that means is that your conviction, if I accept your plea and enter a conviction, is permanent. You don't get to change your mind, you don't get to rethink it, you don't get to appeal it or any of that. You're giving up that right in advance. You understand that?

(ECF No. 1433, PageID.17190-17191.)  Defendant confirmed that he understood the right he was giving up. The court also explained that Defendant was giving up his right to appeal his sentence where, as here, he was sentenced below the maximum recommendation. Specifically, the court explained, "Secondly, you are also giving up in advance the right to appeal your sentence, your actual sentence, even if it's a tougher sentence than you had hoped that it would be. As long as the sentence is as calculated or contemplated in the Rule 11 Plea Agreement, then it's a legitimate sentence and you don't get to appeal it." (ECF No. 1433, PageID.17191.)  Again, Defendant confirmed that he understood this. (*Id.* at PageID.17191.)

The Government, too, reiterated the appeal waiver and read it verbatim into the record:

> [T]here is an appeal waiver which, for the record, I will read for the Court. Your Honor, you've gone over it but I'd like to read the provision on the record. Paragraph 7 of the Rule 11 Plea Agreement states, "Defendant waives any right he may have to appeal his conviction and sentence. If defendant's sentence does not exceed the maximum recommendation allowed by part three of this agreement, defendant also waives any right he may have to appeal the sentence. If the sentence imposed is within the guideline range determined by paragraph 2B, the government agrees not to appeal the sentence but retains its right to appeal any sentence below that range."

(*Id.* at PageID.17202.)

Thereafter, the court confirmed with Defendant during the Rule 11 hearing that he had had ample time to review and consider the Rule 11 agreement, and to discuss it with his attorney.  And the court and Defendant further engaged in the following discussion:

> THE COURT: Has anyone, Mr. Werth, tried to force you or threaten you in order to get you to enter a plea of guilty here?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: Has anyone done anything you think is illegal or unethical, or anything of that sort, in order to try to persuade you to plead guilty?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: You think this is all on the up and up, then, in terms of your negotiation and the commitments that have been made by you and by the government, is that true, sir?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And you're satisfied with Mr. Day and his discussions with you and his preparation for your decision in this situation?
>
> THE DEFENDANT: Yes, sir.

9

(ECF No. 1433, PageID.17208-17209.)  Defendant then placed on the record his acceptance of the Rule 11 agreement and his knowing and voluntary guilty plea.

The court rejects Defendant's current, entirely inventive efforts to call into question his appellate waiver.  Defendant makes desperate and unavailing arguments that the Rule 11 agreement was forged, that the transcripts were altered, and that he never knowingly waived his appellate rights. The court recalls with absolute clarity Defendant's demeanor and assertions during the plea hearing, and his waiver is confirmed by the valid and reliable transcript. Defendant waived his right to appeal, and his waiver was knowingly and voluntarily made. *United States v. Beals*, 698 F.3d 248, 255 (6th Cir. 2012). Any attempt to argue to the contrary now is rejected as baseless.

### B.  Waiver of Sentencing Issues

Similarly, Defendant also waived his right to appeal any sentencing issue. Defendant devotes many of his documents to arguing that he should have been allowed to argue on appeal whether certain conduct was attributable to him for sentencing purposes.  As set forth above, Defendant retained the right to make this argument *at sentencing*, but he waived any right to appeal the sentence so long as it fell below the maximum recommendation set forth in the Rule 11 Agreement.  Under the terms of the Rule 11 Agreement, the maximum recommendation was 294.5 months, and the court sentenced Defendant well below that maximum, to 188 months.  The Sixth Circuit held "[t]hat recommendation did not breach the government's agreement to recommend a sentence of no more than 294.5 months. And we find no ambiguity in the plea agreement that would prevent its enforcement." (ECF No. 2106, PageId. 30683.) The

court agrees. Defendant's waiver was knowing and voluntary and thus constitutionally valid. There is no basis for relief.

### C. Post-Conviction Waiver

To the extent Defendant argues he did not waive any right to seek post-conviction relief under 28 U.S.C. § 2255, the Government agrees and is not seeking to enforce any such waiver. (ECF No. 2238 at PageID.31695.)

### D. Right to a Fair Sentencing

Defendant makes a series of arguments that his due process right to a fair sentencing was violated related to the court's treatment of the "Danny Burby Assault." These arguments, however, are back door attempts to, essentially, appeal his sentence, which he is not allowed to do under the terms of the Rule 11 Agreement. Moreover, as the Government points out, Defendant's ability to obtain credit for time served on a supervised release violate that is related to relevant conduct in his instant offenses was specifically tied to the terms of his Cooperation Agreement. (ECF No. 2238, PageID.31695.) Under that Cooperation Agreement, if the Government determined that Defendant had provided "substantial assistance," the Government would "recommend that a downward departure under § 5K2.23 is appropriate to adjust the defendant's sentence for the period of imprisonment already served on another offense that is relevant conduct to the instant offense of conviction." (*Id.* at PageID.31695-31696.) However, as the Government did not determine Defendant provided substantial assistance, no downward departure motion was made (or warranted). The issue is therefore both foreclosed by Defendant's appeal waiver and without merit.

### E. Ineffective Assistance of Counsel-Sentencing Attorney

Much of Defendant's many submissions are focused on the alleged ineffective assistance of counsel provided by his attorney Jeffrey Day at sentencing. Defendant claims that Attorney Day did not vigorously represent his interests at sentencing, and did not pursue objections to the presentence report that would have purportedly lowered his guideline range. The court disagrees. In this case, this particular Defendant did more to undermine his attorney's efforts than in any other case in the court's recollection. During his plea hearing, Defendant made out a factual basis under oath to support to a finding of guilt and, additionally, agreed to certain guideline provisions. Despite this initial acceptance of responsibility, following his guilty plea Defendant began his journey of what can be described as "going rogue," in which he filed countless pro se documents making broad and incredible allegations of fraud, conspiracy, and misconduct. He attempted to paint virtually every Government official as a liar while simultaneously downplaying his own wrongdoing. As the court summed up at his sentencing:

> My perception of the Government's statement here is that over the course of years, you have engaged in conduct that amounts to minimization, that is minimization of your own activities, avoiding a consistent acceptance of responsibility, misstating and mischaracterizing facts to provide a more favorable false light for your own activities. What this amounts to, if I sort of pile it all up and give it a name is avoiding responsibility.

(ECF No. 2007, PageID.30050-30051.) In other words, in the face of Defendant's constant and frivolous interference with his representation, Attorney Day was left with not much to work with. Defendant has not shown how calling additional witnesses or

12

performing any additional investigation could possibly help the case that Defendant had made for himself by fabricating falsehoods and avoiding responsibility. The assertion that additional witnesses could have helped his case is both dubious and the equivalent of "mere assertion of [her] innocence," which is inadequate to succeed on a § 2255 motion. *Martin*, 889 F.3d at 832. Given the wide range of professional choices an attorney can make and the substantial deference provided under the *Strickland* standard, the court does not find counsel's performance deficient. *Strickland*, 466 U.S. at 687. Defendant's assertions are contradicted by the record. *Valentine*, 488 F.3d at 333. It was not beyond the wide range of reasonable professional conduct for counsel to not conduct further investigations or call the desired witnesses. *Strickland*, 466 U.S. at 687. Nor is it likely that anything discovered would have a "reasonable probability" of changing the outcome at sentencing. *Strickland*, 466 U.S. at 694.

With respect to the allegation that Mr. Day did not file a notice of appeal, Defendant cannot show prejudice as a timely notice of appeal was filed by another attorney.

### F. Ineffective Assistance of Counsel-Appellate Attorney

Defendant makes certain arguments related to his appellate attorney, Todd Mosely. However, in the face of a valid appeal waiver, Mr. Mosely could not set forth *any* appellate arguments. Inasmuch as the Sixth Circuit held enforced the appeal waiver and dismissed his appeal, Defendant cannot show that appellate counsel was ineffective.

### III. CERTIFICATE OF APPEALABILITY

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability ("COA") is issued under 28 U.S.C. § 2253. A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Defendant must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)). In this case, the court concludes that reasonable jurists would not debate the court's ruling. Therefore, the court will decline to issue a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B), (2).

### III. CONCLUSION

IT IS ORDERED that Defendant's Motion to Vacate Sentence (ECF No. 2195) is DENIED.

IT IS FURTHER ORDERED that the court DECLINES to issue a Certificate of Appealability.

Finally, all pending motions, which can fairly be interpreted as attempts to supplement or amend Defendant's Motion to Vacate are TERMINATED.

      s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

14

Dated: March 31, 2022

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, March 31, 2022, by electronic and/or ordinary mail.

 S/Lisa Wagner
Case Manager and Deputy Clerk
(810) 292-6522

S:\Cleland\Cleland\CHD\Criminal\DD\11-20129.WERTH.2255.chd.docx